**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____

|  |  |  |
|---|---|---|
| **DANIEL HICKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL NO. 3:08CV758** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

_____

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Daniel Hicks, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for Child's Benefits (CB) and Supplemental Security Income (SSI).  The Commissioner's final decision is based on a finding by the Administrative Law Judge (ALJ) that Plaintiff was not disabled as defined by the Social Security Act (the Act) and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket entry no. 13) be DENIED; that Defendant's

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C).  In accordance with these rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and the Court will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

motion for summary judgment (docket entry no. 15) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed for CB and SSI in March 2006, claiming disability due to educable mental retardation, lymphedema, asthma, and mild mitral valve prolapse.  (R. at  57.)  Initially, Plaintiff alleged that his disability's onset date was September 6, 1995, the date used for purposes of receiving child disability benefits on the account of his father.  (R. at 113.)  The date was subsequently amended to March 31, 2006 when Plaintiff filed an application for Title XVI benefits because he would not be entitled to additional child benefits after July 2006 when he was no longer a full-time student.  (R. at 122.)  The Social Security Administration denied Plaintiff's claims initially and on reconsideration.[2]  (R. at 57, 65.)  Plaintiff requested a hearing and on March 11, 2008, accompanied by counsel, he testified before an ALJ.  (R. at 25-51.)  On June 27, 2008, the ALJ denied Plaintiff's application, finding that he was not disabled under the Act because based on his age, education, work experience, and residual functional capacity, there were jobs he could perform which exist in significant numbers in the national economy.  (R. at 21.)  The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.  (R. at 3-6.)

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government—the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services—under arrangement with the SSA.  20 C.F.R. Part 404, Subpt. Q; see also § 404.1503.  Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

## II.  QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence.  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'"  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589).  In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)).  The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed.  Perales, 402 U.S. at 390.  While the standard is high, if

the ALJ's determination is not supported by substantial evidence on the record, or if the

ALJ has made an error of law, the district court must reverse the decision.  Coffman v.

Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in

order to determine if a claimant is eligible for benefits.  20 C.F.R. §§ 416.920,

4041.1520; Mastro, 270 F.3d at 177.  The analysis is conducted for the Commissioner by

the ALJ, and it is that process that a court must examine on appeal to determine whether

the correct legal standards were applied, and whether the resulting decision of the

Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at

the time of the application and, if so, whether the work constituted "substantial gainful

activity" (SGA).[3]  20 C.F.R. §§ 416.920(b), 404.1520(b).  If a claimant's work

constitutes SGA, the analysis ends and the claimant must be found "not disabled,"

regardless of any medical condition.  Id.  If the claimant establishes that he did not

engage in SGA, the second step of the analysis requires him to prove that he has "a

severe impairment . . . or combination of impairments which significantly limit[s] [his]

physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c); see also

20 C.F.R. § 404.1520(c).  In order to qualify as a severe impairment that entitles one to

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the
C.F.R.  Substantial work activity is "work activity that involves doing significant
physical or mental activities.  Your work may be substantial even if it is done on a part-
time basis or if you do less, get paid less, or have less responsibility than when you
worked before."  20 C.F.R. § 494.1572(a).  Gainful work activity is work activity done
for "pay or profit, whether or not a profit is realized."  20 C.F.R. § 404.1572(b).  Taking
care of oneself, performing household tasks or hobbies, therapy or school attendance, and
the like, are not generally considered substantial gainful activities.  20 C.F.R. §
404.1572(c).

benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v.

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a days, for 5 days a week, or an equivalent work schedule." SSR 96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e.; 8 hours a days, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The Commissioner can carry his burden in the final step with the testimony of a vocational expert (VE).  When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).  Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful."  Id.  If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits.  20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of his disability.  (R. at 13.)  At steps two and three, the ALJ found that Plaintiff had the severe impairments of borderline intellectual functioning, a learning disorder, asthma, mild mitral valve prolapse, hypertension, and lymphedema affecting his left leg, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage.  (R. at 14-16.)  The ALJ next determined that Plaintiff had the RFC to perform light duty work, finding that Plaintiff had the ability to lift or carry up to twenty pounds occasionally, ten pounds frequently, and that he could stand or walk six hours in an eight-hour workday.  (R. at 20.)  Additionally, the ALJ determined that Plaintiff had to avoid exposure to extreme

temperatures and respiratory irritants, and that he was limited to performing simple, routine, repetitive tasks.  (R. at 20.)

The ALJ then noted at step four of the analysis that Plaintiff had no past relevant work experience.  (R. at 20-21.)  At step five, after considering Plaintiff's age, education, work experience and RFC, the ALJ found that there are other occupations that exist in significant numbers in the national economy that Plaintiff could perform.  (R. at 21.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such he was not entitled to benefits.  (R. at 21-22.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mem. in Supp. of Summ. J.)  In support of his position, Plaintiff argues: (1) the ALJ erred in giving minimal weight to the opinion of Plaintiff's primary treating physician; (2) the ALJ erred by failing to consider all of the assessments of the state agency medical consultants; (3) the ALJ erred in giving great weight to other of Plaintiff's treating physicians; (4) the ALJ erred in finding that Plaintiff could perform light duty work; and (5) the ALJ erred in determining that Plaintiff could perform light duty work without considering evidence from a VE.  (Pl.'s Mem. in Supp. of Mot. for Summ. J., "Pl.'s Mem." at 5, 13-23.)  Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and should therefore be affirmed.  (Def.'s Mot. for Summ. J. and Mem. in Supp. Thereof, "Def.'s Mem." at 24.)

**1.      Plaintiff contends that there is no informed medical opinion that supports the ALJ's disability determination.**

Plaintiff contends that there was no informed medical opinion that supported the ALJ's determination that Plaintiff was capable of performing light work.  (Pl.'s Mem. at 13-15.)  Specifically, Plaintiff asserts that: (1) the ALJ erred in not affording significant weight to the evaluation completed by Plaintiff's primary care physician, Dr. Walker; (2) the ALJ erred by failing to consider all of the assessments of the state agency medical consultants, particularly the evaluation by a Dr. Scott; and (3) the ALJ erred in affording significant weight to the evaluations of Plaintiff's other treating specialists, Dr. Schneider and Dr. Restaino.  (Pl.'s Mem. at 13, 16, 20.)  Plaintiff argues that failing to afford Dr. Walker's evaluation significant weight was improper, as Dr. Walker provided general treatment, whereas Drs. Restaino and Schneider, whose assessments were given greater weight by the ALJ, were specialists and therefore did not treat Plaintiff inclusively for all his impairments.  (Pl.'s Mem at 14, 20.)  Plaintiff also contends that Dr. Walker had more complete medical information as a basis in making his assessment.  (Pl.'s Mem. at 15.) Furthermore, Plaintiff asserts that the ALJ erred in failing to consider each of Dr. Scott's findings regarding Plaintiff's employment limitations.  (Pl.'s Mem. at 17.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluations that have been conducted.  See 20 C.F.R. § 416.912(f).  When the record contains a number of different medical opinions, including those from the plaintiff's treating physicians, consultative examiners or other sources that are consistent with each other,

then the ALJ makes a determination based on that evidence.  See 20 C.F.R. § 416.927(c)(2).  If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved.  20 C.F.R. § 416.927(c)(2), (d).  Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p.  However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported.  Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005).  See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

      A.    Plaintiff contends that the ALJ erred in not affording significant weight to Dr. Walker's evaluation.

Plaintiff asserts that the ALJ erred in not affording significant weight to an evaluation by Plaintiff's primary treating physician, Dr. Walker, while the ALJ afforded greater weight to assessments by other, less involved treating specialists.  (Pl.'s Mem. at 13.)  Plaintiff presented the ALJ with an assessment form completed by Dr. Walker that outlined the basis of his assertions.  Dr. Walker opined that, based on Plaintiff's asthma, hypertension, leg edema, and "history from patient," Plaintiff was unable to perform substantial gainful activity.  (R. at 408.)  Dr. Walker further reported that Plaintiff was incapable of even "low stress" jobs due to anxiety.  (R. at 408.)  Additionally, Dr. Walker

stated that Plaintiff's experience of pain was constantly severe enough to interfere with the attention and concentration needed to perform even simple work tasks, and that Plaintiff could only sit five to ten minutes at a time while being able to stand no more than five minutes at one time.  (R. at 408.)  Dr. Walker also found that Plaintiff could only sit and stand or walk less than two hours per day, could never lift any weight, and could only occasionally twist, stoop, crouch, climb ladders and stairs, and would be absent from work at least four days per month.  (R. at 409-10.)  However, Dr. Walker saw Plaintiff only periodically over the course of sixteen years, and the intermittent visits resulted from discrete incidents that were resolved, such as falling off a swing set, involvement in a minor motor vehicle accident, and cellulitis of the right elbow.  (R. at 218-19, 235.)

In addition to the assessment provided by Dr. Walker, the Record also contains an RFC Assessment completed by a Dr. Schneider, a pediatric cardiologist.  (R. at 414-17.) After examining Plaintiff, Dr. Schneider concluded that Plaintiff exhibited only mild mitral valve prolapse, did not exhibit any evidence of peripheral edema, and that he did not have any limitation on his ability to perform physical activity.  (R. at 191, 415.)  Dr. Schneider also opined that Plaintiff was capable of high stress work, would not need to take unscheduled breaks during an eight-hour workday, and had no environmental restrictions.  (R. at 415-18.)  Plaintiff was also examined by a pediatric nephrologist, a Dr. Restaino, who diagnosed Plaintiff with hypertension, but who also reported that Plaintiff denied experiencing headaches, visual changes, or lower extremity edema.  (R. at 206, 225.)  Dr. Restaino further opined that Plaintiff's hypertension should not prevent him from seeking employment.  (R. at 404.)

The Record also contains an RFC Assessment completed by a Donna Mitchell, a nurse practitioner, who treated Plaintiff from 2002 to 2007, along with Dr. Irani, a pediatrician specializing in the treatment of allergies and immunology.  (R. at 400-03.) Ms. Mitchell reported that Plaintiff's symptoms would rarely interfere with his attention and concentration and that his asthma was well controlled with regular medications.  (R. at 401.)  Ms. Mitchell also concluded that Plaintiff could sit at least six hours, stand for about four hours, and would only infrequently need to take unscheduled breaks during a workday.  (R. at 401-02.)  At most, Ms. Mitchell noted that Plaintiff needed to avoid concentrated exposure to wetness and perfumes and needed to avoid even moderate exposure to high humidity, fumes, odors, gases, dust, and chemicals.  (R. at 403.) Accordingly, Ms. Mitchell opined that Plaintiff could perform substantial gainful employment with regular medication and environmental controls.  (R. at 398.)

The ALJ analyzed the assessment of the treating physician; however, after comparing his opinion to Plaintiff's medical records and the opinions of Plaintiff's other treating specialists, he gave significant, but not controlling, weight to Plaintiff's other treating specialists.  Specifically, the ALJ did not give significant weight to Dr. Walker's opinion because it "was not supported by his own limited and intermittent treatment records, nor was it corroborated by the assessments of treating specialists."  (R. at 20.) The ALJ determined that Plaintiff's treating specialists, Dr. Schneider and Dr. Restaino, reported that Plaintiff's hypertension and mitral valve prolapse were not functionally limiting.  (R. at 20, 404, 418.)  Accordingly, the ALJ concluded that Dr. Walker's opinion was inconsistent with the objective medical evidence and with the reports of

other treating specialists, justifying the giving of Dr. Walker's opinion less than controlling weight.  (R. at 20.)

A review of the ALJ's analysis demonstrates that his conclusions were based on appropriate medical evidence, and that substantial evidence supports the weight assigned to each of the physicians' assessments.  Plaintiff asserts that the ALJ's opinion had no medical foundation in the evidence, and that he improperly discounted Dr. Walker's opinions.  (Pl.'s Mem. at 14.)  However, as explained in the ALJ's opinion, his conclusions were based on the assessments by state agency consultants; Plaintiff's other treating specialists, Dr. Schneider and Dr. Restaino; and Plaintiff's physician Dr. Irani and her nurse practitioner, Ms. Mitchell, as those opinions were most consistent with Plaintiff's medical records. (R. at 20.)  In fact, the ALJ adopted a portion of Ms. Mitchell's nonexertional assessment in determining that Plaintiff must avoid exposure to temperature extremes and respiratory irritants.  (R. at 20, 403.)  The ALJ also accounted for Dr. Schneider's and Dr. Restaino's medical assessments, concluding that Plaintiff was able to stand and walk six hours in an eight-hour workday and lift weights of up to twenty pounds occasionally and ten pounds frequently.  (R at 20, 402, 415-19.)  The primary deviation from Dr. Schneider's assessment in the ALJ's findings was the ALJ's determination that Plaintiff could lift only ten to twenty pounds, as compared with Dr. Schneider's assessment that Plaintiff could lift over fifty pounds.  (R. at 20, 418.)  As Plaintiff's medical records were inconsistent, the ALJ had the authority to accept the medical opinions that were most consistent with Plaintiff's medical records, and upon a review of the medical records and the Plaintiff's daily activities, as well as the opinion of other physicians, the ALJ determined the Plaintiff was limited to only ten to twenty

pounds of lifting.  20 C.F.R. § 416.927(c)(2), (d); see also, Jarrells, 2005 WL 1000255, at *4.  (R. at 20, 409.)

Less weight was given to Dr. Walker's opinion because a review of Plaintiff's medical records did not demonstrate any basis for such stringent and permanent restrictions on Plaintiff's work capabilities as described by Dr. Walker.  (R. at 20, 407-11.)  A review of the Record supports this conclusion.  While Dr. Walker stated that Plaintiff was unable to perform substantial gainful employment and was incapable of even "low stress" jobs, he cited only "history from patient" as his reason for that conclusion.  (R. at 405, 408.)  He also indicated that he saw Plaintiff only "as needed," not on a continuing basis for treatment of any of Plaintiff's impairments, as did Plaintiff's other treating specialists.  (R. at 405.)  Furthermore, Dr. Walker indicated that he only treated Plaintiff for cellulitis of the elbow, that Plaintiff's prognosis was good, and that his asthma was controlled.  (R. at 407.)  Therefore, the ALJ properly weighed Dr. Walker's assessment against the medical records and determined that Dr. Walker's evaluation merited only minimal weight.

B.      Plaintiff contends the ALJ erred in considering only parts of the assessments of state agency consultants.

Plaintiff also asserts that the ALJ erred in considering only selected portions of the assessments of the state agency consultants, Dr. Saxby and Dr. Scott.  (Pl.'s Mem. at 16.)  Plaintiff presented the ALJ with assessment forms completed by Dr. Saxby and Dr. Scott with the psychology report completed by Dr. Scott as the basis of his assertions.  (Pl.'s Mem. at 16-17.)  Specifically, Plaintiff contends that the ALJ improperly failed to consider all of Dr. Scott's evaluations.  (Pl.'s Mem. at 17.)  Dr. Scott diagnosed borderline intellectual functioning and "ruled-out" mixed receptive-expressive language

13

disorder.  (R. at 185.)  She found that Plaintiff had a global assessment of functioning

score of 58, which is in the "moderate" range of 58-60.  (R. at 185.)  Dr. Scott opined that

Plaintiff would be able to complete simple and repetitive tasks, could maintain regular

attendance in a workplace, could perform work consistently, but would need special

supervision, and would be unable to complete a normal workday without interruptions

resulting from his limited verbal skills.  (R. at 186.)

      The ALJ analyzed the assessments of the state agency psychologists; however,

after comparing their opinions and recommendations to Plaintiff's medical records and

the opinions of the treating specialists, he gave significant, but not controlling, weight to

Plaintiff's treating specialists.  Specifically, the ALJ gave some, but not controlling,

weight to Dr. Scott's opinion because Dr. Scott only examined Plaintiff once, and she did

not have the opportunity to consider evidence submitted subsequent to her review of the

Record.  (R. at 181.)  The ALJ resolved that Dr. Scott gave Plaintiff a global assessment

of functioning in the "moderate" range, "an assessment reflective of a greater level of

functioning than argued by counsel."  (R. at 20.)  Furthermore, the ALJ determined that

Dr. Scott's opinion was consistent with previous psychological examinations in finding

that Plaintiff was capable of performing simple, repetitive, routine tasks in environments

that would cater to his non-verbal skills.  (R. at 20, 186.)  Accordingly, the ALJ

concluded that Dr. Scott's opinion was partially consistent with the objective medical

evidence and with the reports of other psychologists, which justified giving Dr. Scott's

opinion some, but not controlling, weight.  In accordance with Dr. Scott's opinion, the

ALJ determined that Plaintiff was limited to simple, routine, repetitive tasks due to his

borderline intellectual functioning and learning disorder.  (R. at 20.)  Therefore, the ALJ

properly weighed Dr. Scott's evaluations with the medical records and determined that

Dr. Scott's assessment merited the weight assigned.

      C.    <u>Plaintiff contends the ALJ erred in affording significant weight to Dr. Restaino's and Dr. Schneider's evaluations.</u>

Plaintiff asserts that the ALJ erred in affording significant weight to Dr.

Restaino's and Dr. Schneider's evaluations.  Specifically, Plaintiff contends that the ALJ

erred in giving great weight to the treating specialists' findings insofar as Plaintiff's

mental limitations are concerned because Dr. Restaino and Dr. Schneider did not treat

Plaintiff for complaints arising out of his mental limitations.  (Pl.'s Mem. at 20.)

As addressed in Section IV.1.A. of this analysis (p. 9), Dr. Restaino, a pediatric

nephrologist who had treated Plaintiff for hypertension for a number a years, opined that

Plaintiff's hypertension should not prevent him from seeking employment.  (R. at 206,

225, 404.)  Similarly, Dr. Schneider, a pediatric cardiologist who also treated Plaintiff for

several years, reported in an RFC assessment that Plaintiff did not have a marked

limitation of physical activity, was capable of high stress work, and could frequently lift

weights of fifty pounds.  (R. at 414-18.)  Dr. Schneider further noted in his assessment

that Plaintiff had zero symptoms that would limit his functional capabilities.  (R. at 415.)

The ALJ analyzed the assessments of Dr. Restaino and Dr. Schneider and, after

comparing their opinions and recommendations to Plaintiff's medical records and the

opinions of state agency psychologists and Plaintiff's treating physician, he gave

significant weight to Dr. Restaino's and Dr. Schneider's evaluations.  Specifically, the

ALJ gave greater weight to Dr. Restaino's and Dr. Schneider's assessments because they

were specialists who had treated Plaintiff's impairments for a number of years.  (R. at 20,

225, 232, 414.)  The ALJ resolved that Dr. Restaino and Dr. Schneider reported that

Plaintiff's "hypertension and mitral valve prolapse are not functionally limiting (i.e., he can lift weights of up to 50 pounds)."  (R. at 20.)  In this respect, the ALJ afforded greater weight to Dr. Restaino and Dr. Schneider's opinions with regard to their areas of expertise, nephrology and cardiology, respectively.  (R. at 20, 206, 414.)  In limiting Plaintiff to simple, routine, repetitive tasks due to his mental limitations, the ALJ in fact took the state agency psychologists' evaluations into account.  (R. at 20, 186.) Furthermore, the ALJ limited Plaintiff to lifting weights of up to only twenty pounds, which was a departure from Dr. Schneider's assessment and an indication that the ALJ considered Ms. Mitchell's and Dr. Walker's evaluations to some meaningful extent.  (R. at 20.)

Having reviewed the ALJ's analysis and the Record, it is clear that the ALJ's assessment of the medical opinions and records was supported by substantial evidence in the Record, including appropriate medical evidence.  As such, Plaintiff's claim that the ALJ's opinion is not supported by informed medical opinion is without merit.

**2.      Plaintiff contends the ALJ erred in determining that Plaintiff can perform light duty work.**

Plaintiff further argues that the ALJ's finding that Plaintiff has an RFC for non-disabling light work was unsupported by substantial evidence.  (Pl.'s Mem. at 20.) Specifically, Plaintiff asserts that the ALJ: (1) did not consider Ms. Mitchell's statement that Plaintiff's medication may cause side effects; (2) ignored the evidence in the Rating of Functional Limitations that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace; and (3) ignored the findings of Dr. Scott.  (Pl.'s Mem. at 21.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1).  The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints.  In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis.  Craig, 76 F.3d at 594; see also SSR 96-7p; 20 C.F.R. §§ 401.1529(a), 416.929(a).  The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that could reasonably produce the individual's pain or other related symptoms.  Id.; SSR 96-7p, at 1-3.  The ALJ must consider all the medical evidence in the record.  Craig, 76 F.3d at 594-595; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added).  If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work.  Craig, 76 F.3d at 595.  The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements.  Craig, 76 F.3d at 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations.  See Eldeco, Inc. v. N.L.R.B., 132 F.3d 1007, 1011 (4th Cir. 1983).  The Court of Appeals for the Fourth Circuit has determined that "[w]hen factual findings rest upon credibility

determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting N.L.R.B. v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)).  Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting N.L.R.B. v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993).

Furthermore, it is well established that a claimant's subjective allegations of pain are not conclusive evidence that the claimant is disabled.  See Mickles v. Shalala, 20 F.2d 918, 919 (4th Cir. 1994).  The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

Here, the ALJ determined that the "medical findings, the routine and conservative nature of [Plaintiff's] medical care, and his admitted daily activities served to diminish his credibility regarding the frequency and severity of his symptoms and the extent of his functional limitations."  (R. at 19.)  The ALJ thus determined that Plaintiff's RFC included "light work, which entails standing and walking six hours in an eight-hour day, and lifting weights of up to twenty pounds occasionally and ten pounds frequently. . . . Due to his borderline intellectual functioning and learning disorder, [Plaintiff] is limited to performing simple, routine, repetitive tasks."  (R. at 20.)  Based on this RFC determination, the ALJ accordingly found that Plaintiff was able to perform light work,

thereby concluding his analysis and finding that Plaintiff was not disabled and not entitled to benefits.  (R. at 20-21.)

The Record supports the ALJ's conclusion that Plaintiff was able to perform light work.  The ALJ considered all of the evidence and came to the conclusion that Plaintiff's testimony regarding the severity and frequency of his symptoms and the extent of his functional limitations was less than credible.  (R. at 17, 19.)  The ALJ conducted the proper <u>Craig</u> analysis in making his decision and based his determination on all of the medical evidence of record.  Particularly, the ALJ considered Ms. Mitchell's report and her designation that Albuterol, a medication Plaintiff took to control his asthma, may cause dizziness, increased heart rate, headaches, and jitteriness.  (R. at 401.)  In considering Ms. Mitchell's report, the ALJ also evaluated the medical evidence in the Record and noted that Plaintiff's asthma was well-controlled on medication and that Plaintiff did not report experiencing any side effects beyond drowsiness, nor do treatment notes from Dr. Irani and Ms. Mitchell reflect any complaints of side effects.  (R. at 17, 295-301.)  Furthermore, the ALJ noted Plaintiff's reported difficulties with concentration, memory, and handling stress and therefore, in any event, limited Plaintiff to performing simple, routine, repetitive tasks.  (R. at 17, 20, 171.)  Additionally, as discussed in Section IV.1.B. of this memorandum opinion (p. 13), the ALJ properly considered Dr. Scott's findings and incorporated her assessment into his analysis.  The analysis supported the ALJ's determination that Plaintiff was able to perform light work.  Accordingly, the Court recommends a finding that there is substantial evidence to support the ALJ's conclusion that Plaintiff was able to perform light work and was, therefore, not disabled.

3.     **Plaintiff contends the ALJ erred in determining that Plaintiff can perform light duty work without testimony from a vocational expert.**

Plaintiff further asserts that the ALJ erred in utilizing the Medical-Vocational Guidelines (Guidelines) to determine that Plaintiff is not disabled under the Act.  (Pl.'s Mem. at 23.)  Specifically, Plaintiff asserts that he has nonexertional limitations and therefore could not perform substantially all of the requirements of light work, such that the ALJ should have utilized a VE to determine whether Plaintiff was disabled under the Act.  (Pl.'s Mem. at 23.)

Prior to determining whether the Grids apply at the fifth step of the analysis, an ALJ must first determine the claimant's RFC.  20 C.F.R. § 404.1569; SSR 83-10.  Based on the RFC determination, the ALJ must then consult the Grids to determine if the claimant meets a rule (or listing) in the Grids.  20 C.F.R. § 404.1569; SSR 83-10.  The Grids categorize jobs by their physical-exertion requirements,[6] namely, sedentary,[7] light,[8] medium, heavy, and very heavy.  See SSR 83-10.  There are numbered tables for the sedentary, light, and medium levels (tables 1, 2, and 3, respectively), and a specific rule for the heavy and very heavy levels (rule 204.00).  SSR 83-10; 20 C.F.R. Pt. 404, Subpt.

---

[6] A claimant's exertional limitation determines the proper exertional level for the claimant's situation.  See SSR 83-10.  An exertional limitation is an impairment-caused limitation that affects one's capability to perform an exertional activity (strength activity) such as sitting, standing, walking, lifting, carrying, pushing, and pulling.  SSR 83-10.

[7] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. . . . Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 C.F.R. § 404.1567(a).

[8] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. . . . A job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls.  20 C.F.R. § 404.1567(b).

P, App. 2.  Based on the claimant's RFC, the ALJ must first determine which table to apply, i.e., if the claimant's RFC limits him to sedentary exertional level, then Table No. 1 is the appropriate table.  Next, based on the claimant's age, education, and previous work experience, the rule directs a finding of "disabled" or "not disabled."  Utilization of the Grids is predicated on the claimant suffering from exertional limitations and the Grids are not applicable if the claimant suffers solely from nonexertional limitations.  20 C.F.R. § 404.1569a; see 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.01(e)(1) ("The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of impairments.").  The reason for this rule is that nonexertional limitations may nevertheless limit a claimant's ability to perform a full range of unskilled occupations at a given exertional level.  Thus, where a claimant suffers only exertional limitations, the ALJ must consult the Grids to determine eligibility for benefits.  See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).  At the same time, if a claimant suffers from both exertional and nonexertional limitations, then the ALJ must consult the Grids first to determine whether a rule directs a finding of disabled based on the strength requirement alone.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 1, § 200.01(e)(2).

If the ALJ finds that a rule does not direct a finding of disabled based on the strength requirement alone, the ALJ must determine the effect a particular additional nonexertional limitation will have on the range of work remaining that an individual can perform.  SSR 85-14.  In so doing, the use of a vocational resource may be helpful, or sometimes necessary; however, where it is clear that the additional limitation has very little effect on the exertional occupational base, the conclusion directed by the

appropriate rule is not materially affected.  Id.  For example, environmental restrictions would not significantly affect the potential unskilled light occupational base, and therefore, the use of a VE is not necessary when confronted with nonexertional environmental restrictions.  Id.

When analyzing a claimant's ability to perform light work under the Grids, the ALJ must determine whether the claimant, based on his RFC, has any additional exertional limitations that may erode the light occupational base.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202(a); see also 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201(h)(3).  "The functional capacity to perform a wide or full range of light work represents substantial work capability compatible with making a work adjustment to substantial numbers of unskilled jobs."  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202(b).  The Social Security Regulations and Rulings recognize that a finding of "disabled" may be appropriate for some individuals of advanced age who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or for those who have no work experience.  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202(c).  However, these rules also clearly state that, for individuals without adversity of advanced age, "the lack of relevant work experience would have little significance since the bulk of unskilled jobs require no qualifying work experience."  20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202(g).  When utilizing the Grids to analyze a claimant's abilities to perform light work, illiteracy or inability to communicate in English has little significance in determining if the claimant's light work occupational base has been eroded.  See id.  While educational level is one of the factors considered by the Grid system, other educational or communicative limitations will rarely be a

significant factor in the analysis.  See id.; see also SSR 96-9p.  The Social Security

Administration has advised that basic communication is all that is necessary to perform

unskilled light work.  See 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202(g).  Indeed, "[t]he

basic mental demands of competitive, remunerative, unskilled work include the abilities

(on a sustained basis) to understand, carry out, and remember simple instructions; to

respond appropriately to supervision, coworkers, and usual work situations, and to deal

with changes in a routine work setting."  SSR 85-15.

      It is clear from the ALJ's opinion that he properly considered Plaintiff's relevant

limitations, both exertional and nonexertional, in making his disability determination

pursuant to the Guidelines.  As discussed in Section IV.1.B. of this Memorandum

Opinion (p. 13), the ALJ properly considered the state agency psychologists' evaluations

and an assessment by Dr. Blackmer, another consulting psychologist.  In his RFC

assessment, the ALJ also included Dr. Scott's and Dr. Blackmer's evaluations that were

supported by the medical evidence of record.  (R. at 18-20.)  The ALJ concluded that the

limitations in both Dr. Blackmer's and Dr. Scott's assessments supported the

determination that Plaintiff could perform simple, routine, repetitive tasks.  (R. at 20,

175-79, 181-87.)  Though this is a limitation on Plaintiff's work capabilities, it does not

limit Plaintiff's abilities beyond the basic mental demands of competitive, remunerative,

unskilled work; namely, the ability to understand, carry out, and remember simple

instructions; to respond appropriately to supervision, coworkers, and usual work

situations; and to deal with changes in a routine work setting.  See SSR 85-15; see also

SSR 96-9p.  Given the ALJ's careful consideration of Dr. Scott's and Dr. Blackmer's

assessments, it is clear that the ALJ appropriately considered Plaintiff's relevant

nonexertional limitations when making his disability determination pursuant to the Guidelines; and, therefore, it was unnecessary for the ALJ to consult a VE in reaching a disability determination.

## V.  CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket entry no. 13) be DENIED; that Defendant's motion for summary judgment (docket entry no. 15) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendation of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Date:  July 14, 2009
Richmond, Virginia